Sandra L. Jonas | 035824
Shifa Alkhatib | 031149
**HKM EMPLOYMENT ATTORNEYS**
1 N. 1st Street, Suite 711
Phoenix, Arizona 85004
Phone/Fax: 480-896-2636
sjonas@hkm.com
salkhatib@hkm.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| *Michael Reynolds, on behalf of himself and those similarly situated,* **Plaintiff,** <br><br> **vs.** <br><br> *J.E.T. Limousines and Transportation, LLP (an Arizona Limited Liability Company) and William Jinks, in his individual capacity* <br><br> **Defendants.** | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> (Jury Trial Requested) |

Plaintiff, Michael Reynolds ("Plaintiff"), individually, and on behalf of all other persons similarly situated, alleges as follows:

### I.    NATURE OF THE CASE

1.  Plaintiff Michael Reynolds ("Reynolds" or "Plaintiff") brings this action against J.E.T. Limousines and Transportation, LLP ("Company" or "JET Limousines") and William Jinks ("Defendant Jinks")  (collectively referred to as "Defendants") for unlawful failure to all wages owed, including overtime compensation, tips,

wages for mandatory off-the-clock work, unlawful deductions from wages, and minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 ("FLSA"); the Arizona wage laws, A.R.S. §§ 23-351-53, and § 23-355 ("Arizona Wage Laws") and the Arizona Minimum Wage Act, A.R.S. § 23-363 and § 23-364 ("AMWA").

2. This action is brought as a collective action to recover unpaid wages, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff and all other similarly situated employees employed by, or formerly employed by, Defendants pursuant to the FLSA.

3. This action is also brought as a class action to recover unlawfully withheld minimum wage, statutory penalties, interest, attorneys' fees and costs owed to Plaintiff and all other similarly situated employees employed by, or formerly employed by, Defendants pursuant to A.R.S. § 23-363 and A.R.S. § 23-364.

4. For at least three (3) years prior to the filing of this action (the "Liability Period"), Defendants have and continue to have an unlawful policy and practice of failing to pay its chauffeurs for all hours worked (off-the-clock); failing to pay employees overtime compensation for all hours worked in excess of 40 in a workweek; failing to pay employees their full amount of tips due; deducting unauthorized amounts from wages that are not amounts subject to a good faith dispute; and failing to pay minimum wage.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5. Defendants intentionally, willfully, and improperly failed to pay Plaintiff and those similarly situated for all hours worked (off-the-clock); for all hours worked in excess of 40 in a workweek; for all tips due; and intentionally, willfully, and improperly deducted unauthorized amounts from wages due Plaintiff and those similarly situated that were not subject to a good faith dispute in violation of the FLSA, Arizona Wage Laws and the AMWA.

6. Plaintiff seeks to recover unpaid compensation, including interest thereon, statutory penalties, reasonable attorneys' fees and litigation costs on behalf of himself and all similarly situated current and former employees who may opt-in pursuant to 29 U.S.C. § 216(b).

7. Plaintiff intends to request the Court to authorize notice to all such persons informing them of the pendency of the action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b).

8. Plaintiff also intends to request the Court certify a class action, under Fed. R. Civ. P. 23, for the purposes of asserting claims under the Arizona Wage Laws and Arizona Minimum Wage Act. (A.R.S. §§ 23-351 to 353; § 23-355; § 23-363 and § 23-364).

## II.    JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and U.S.C. § 216(b) because this action arises under the Constitution and laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim. The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because acts giving rise to the claims occurred within the District of Arizona.

12. This Court has personal jurisdiction over Defendants because Defendant Jinks is a resident of Arizona and the Company is an Arizona limited liability company that is headquartered in Arizona and regularly conducts business in Arizona.

### III.    PARTIES

1. Plaintiff Michael Reynolds (hereinafter "Plaintiff" or "Reynolds") is and has been, at all times material to this Complaint, an adult resident of the State of Arizona. Reynolds was employed as a full-time employee by Defendants JET Limousines and William Jinks. At all material times, the Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

2. Defendant JET Limousines is a limited liability company organized and existing under the laws of the State of Arizona. The Company was the employer of Plaintiff. JET Limousines is an employer within the meaning of 29 U.S.C. § 203(d).

3. Defendant William Jinks is the founder and owner of the Company. Upon information and belief, he is an unmarried individual who resides in Arizona.

## IV.    FACTUAL ALLEGATIONS

1. William "Billy" Jinks is the President, founder, co-owner, and operator of JET Limousines, which has been operating for over a decade.

2. In his capacity as the President, founder, co-owner, and operator of the Company, Defendant Jinks exercised significant economic control over the Company, sets or is involved in setting the pay rates and pay scales for the chauffeurs; is involved in the hiring and firing decisions of JET Limousines, and is involved in the day to day operations of JET Limousines.

3. In this capacity, Defendant Jinks also participated in the decision to classify Reynolds and those similarly situated as exempt from overtime compensation in violation of the FLSA, and participated in the decisions to fail to pay its chauffeurs, including Reynolds, all tips owed to them; to fail to pay its chauffeurs, including Reynolds, for all hours worked; to deduct unauthorized amounts from the wages owed to its chauffeurs, including Reynolds, for purported damage to Company vehicles; and to pay its chauffeurs, including Reynolds, less than the statutory minimum wage.

### A. JET Limousines' Operations and Chauffeurs' Job Duties

4. JET Limousines is a chauffeur transportation company that operates out of Phoenix, Arizona. The Company provides luxury transportation to meet various

needs, including airport runs, corporate travel, special events such as bachelor parties and sporting events, and even travel to events out of state.

5.  The Company boasts a full-service fleet of just under 100 vehicles., including sedans, SUVs, sprinters, limousines, coaches, and buses.

6.  Clients can book transportation services online by selecting the dates and times of their travel and their desired vehicle.

7.  JET Limousines employs chauffeurs, who are responsible for cleaning, inspecting, vehicles, and refueling Company vehicles, picking up clients and transporting them to their destination in a timely and safe manner.

8.  A valid commercial driver's license ("CDL") is required to operate Company coaches and buses but not the other Company vehicles.

9.  In any given workweek, JET Limousines chauffeurs may operate a variety of Company vehicles, including those requiring CDLs and small vehicles, such as sedans and SUVs.

10. The Company issues chauffeur schedules on Fridays for the following week. Chauffeurs access their assigned schedule through an application called "Fasttrak."

11. The schedule identifies each chauffeur's assigned trips, including departure times, estimated completion times, locations, and the vehicles reserved by Company clients.

12. When the Company is not able to honor the type of vehicle that a client has reserved, the Company provides the client with an upgraded vehicle at no extra cost to the client.

13. For example, if a client reserves a sprinter van (which has the capacity to transport 12 passengers), but one is not available, the Company provides the client with an upgraded vehicle - a passenger bus (which has the capacity to transport 40 passengers) and charges the client for the (lesser amount) of the reserved vehicle.

14. The Company requires its chauffeurs to arrive at the Company's yard, located at 1725 E Washington Street, Phoenix, Arizona 85034 ("Yard"), at least one hour before their scheduled start time.

15. Chauffeurs must perform pre-trip inspections, which includes an exterior and interior inspection of the vehicle for safety and cleanliness.

16. The Company also requires its chauffeurs to refuel their Company vehicle at the end of their shift. Commercial vehicles are refueled at one of several commercial fuel stations near the Yard.

17. Defendant Jinks also requires chauffeurs to perform post-trip inspections, which consists of identifying any safety issues that may have arisen during the use of the vehicle. Depending on the vehicle, these post-trip inspections can take between 15 and 20 minutes.

**B.  JET Limousines' Illegal Pay Scheme for Chauffeurs**

18. Reynolds worked for JET Limousines as a chauffeur from December 2020 to October 2024.

19. At all relevant times, Reynolds held a valid CDL and operated the various types of Company vehicles, including smaller vehicles for which a CDL was not required, as well as coaches and buses, throughout his employment with the Company.

20. On March 17, 2023, Reynolds signed the Company's "Chauffuer [sic] Wage Agreement." ("Wage Agreement"). *See* Exhibit 1.

21. The Wage Agreement includes a chart, which identifies the corresponding hourly rate and minimum hours paid. *Id*. Certain vehicles, such as limousines and mini coaches, also include a per diem. *Id.* The chart also includes a column titled, "OTR," presumably indicating pay for "over the road."

22. The Wage Agreement expressly prohibits Reynolds from disclosing his hourly rates, per diem, minimum hours paid, and OTR with other employees.[1] *Id.* The Wage Agreement warns that disclosing the pay information to other employees may result in a decrease in pay scale.[2] *Id*.

---

[1] This prohibition is an unlawful restraint on protected concerted activity pursuant to the National Labor Relations Act, and is thus unenforceable. The National Labor Relations Board has exclusive jurisdiction over this unlawful practice.
[2] This is an illegal retaliatory policy in violation of the National Labor Relations Act.

1

2        1. <u>JET Limousines' Illegal, Arbitrary Wage Deductions</u>

3     23. The Wage Agreement sets out other criteria, "Performance Standards," by which

4         the Company may decrease a chauffeur's pay and/or entire pay scale, including

5         receiving complaints from customers, failing to refuel a Company vehicle at the

6         end of the shift, wearing a polo shirt or otherwise failing to adhere to "uniform

7         policies," untimeliness, and damaging a vehicle. *Id.*

8     24. At Defendant Jinks' direction, the Company arbitrarily deducts chauffeurs' pay

9         under the guise of purported violations of the Performance Standards.

10    25. For example, Defendant Jinks has deducted and continues to deduct arbitrary

11        amounts from chauffeurs' pay for purported customer complaints. Yet, when

12        chauffeurs question Defendant Jinks about the purported complaints, Defendant

13        Jinks refuses to disclose any verifying information regarding the alleged

14        complaints.

15    26. Defendant Jinks also deducts arbitrary amounts from chauffeurs' wages for

16        purported damage to Company vehicles, but when chauffeurs have questioned

17        Defendant Jinks about the amounts deducted, or dispute that any amount should be

18        withheld for purported damage to Company vehicles, Defendant Jinks refuses to

19        disclose the bases of the amounts deducted or provide supporting documents for

20        such amounts.

21    27. Defendant Jinks makes all decisions regarding when to deduct an amount from

22        chauffeurs' wages and how much to deduct.

28. Reynolds has personally been subjected to unauthorized deductions from his pay by Defendant Jinks, has disputed those deductions with Defendant Jinks to no avail, and has requested supporting documents for the amounts deducted which Defendant Jinks and the Company did not provide.

29. In 2023, five chauffeurs, including Reynolds, were assigned to drive to San Diego to pick up the clients. Company dispatchers approved three of the drivers to leave earlier than scheduled.

30. When Defendant Jinks learned that three of the chauffeurs had left earlier, he ordered them to park in Yuma for at least one hour, which they did. The Company then docked those chauffeurs between three and four hours of pay without providing any explanation.

### 2. JET Limousines' Illegal, Arbitrary Reduction of Pay Rates

31. JET Limousines also arbitrarily reduces chauffeurs pay rates when the Company provides an upgraded vehicle to a client at no cost to the client.

32. Instead of paying chauffeurs the pay rate that corresponds with the vehicle driven (which increases by size of the vehicle), JET Limousines pays its chauffeurs the lower pay rate of the vehicle ***reserved by the client***.

33. This practice unfairly reduces chauffeurs' wages, forcing the chauffeurs to absorb the additional cost of providing upgraded vehicles when the Company's inventory is insufficient to meet the needs of its clientele.

34. The Company and Defendant Jinks began this practice without notifying the chauffeurs.

35. When Reynolds and other chauffeurs noticed they were not being paid the correct pay rates, they complained to Defendant Jinks, but Defendant Jinks refused to pay in accordance with the Wage Agreement.

36. Defendant Jinks told chauffeurs that it was *more convenient for the Company* to pay chauffeurs based on the vehicle *reserved by the client* as opposed to the vehicle *driven by the chauffeur*.

          3.   <u>JET Limousines Illegal Mandatory Off-the-Clock Work</u>

37. The Company and Defendant Jinks require chauffeurs work off-the-clock every workday.

38. For example, chauffeurs are not paid for the following mandatory work they must perform: arriving at the Yard at least one hour before their start time; time spent performing pre-trip inspections; time spent driving from the Yard to the first pickup location of the day; refueling Company vehicles at the end of their shifts using one of the commercial fuel stations designated by the Company; the time they spend performing post-trip inspections.

39. The Company's Wage Agreement states it may decrease chauffeurs' pay rates or pay scales for failing to refuel a vehicle, yet does not pay the chauffeurs for their time spent performing this mandatory duty.

40. The Company also does not pay its chauffeurs for mandatory meetings with Defendant Jinks or the General Manager, Eugene Thomas.

41. In many cases, the mandatory meetings last 30 minutes or longer.

### 4.    JET Limousines Illegal Failure to Pay All Tips Owed

42. The Company has a practice and policy of not paying chauffeurs the full amount of the tips they are legally entitled to be paid.

43. On February 27, 2022, a client paid a 10% gratuity which should have resulted in the chauffeur being paid, at minimum, $111.75. The Company instead paid $71.50 to the chauffeur and withheld the remaining balance.

44. Chauffeurs have complained about not being paid their full tips, but Defendant Jinks refuses to change the Company's practice.

45. Upon information and belief, the Company and Defendant Jinks also have a practice of concealing tips and failing to pay any of the tip to the chauffeur who earned the tip.

### 5.    JET Limousines' Failure to Pay Minimum Wage

46. Finally, the illegal pay scheme described above results in instances where chauffeurs are not paid minimum wage as required by Arizona law.

47. Pursuant to the AMWA, the minimum wage in Arizona during the preceding three years was as follows:

A.  $12.80 per hour in 2022;

B.  $13.85 per hour in 2023;

C.  $14.35 per hour in 2024.

48. On May 21, 2024, Reynolds worked for 23.5 hours and was paid hourly wages totaling $225. *See* Exhibit 2.  This equals $9.57 per hour, which falls well short of Arizona's minimum wage requirement of $14.35.

*49.* Additionally, the pay records that the Company provides its chauffeurs do not disclose (or do not consistently disclose) all data required to be disclosed on paystubs, including the pay rate and (for employees paid by the hour) the numbers of hours worked. *See* **Exhibit 3**. For example, Plaintiff's pay stub reflecting his pay from JET Limousines for the pay period starting September 11, 2024 and ending September 17, 2024, identifies Plaintiff's basis of pay as "Hourly," but the rate of pay is left blank and the number of hours is set to zero. *See, id.*

50. Upon information and belief, Defendants have operated under a willful scheme to deprive its chauffeurs, including Reynolds, of the full amount of compensation owed under the FLSA and AMWA by failing to compensate them for all hours worked.

51. Upon information and belief, Defendants have failed to keep appropriate records as required by the FLSA, with respect to Reynolds and the other chauffeurs, sufficient to determine wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq.

52. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Reynolds and the other chauffeurs.

# V.      CAUSES OF ACTION

## Collective Action Allegations

## Count I – Violation of the Fair Labor Standards Act

53. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding and foregoing paragraphs.

54. Plaintiff brings Count I for Relief under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all similarly situated employees currently and formerly employed by Defendants. Pending any modifications necessitated through discovery, Reynolds preliminarily defines this "216(b) Class" as follows:

**All individuals employed by JET Limousines as chauffeurs at any time from January 22, 2022 to the present.** ("Collective Action Members").

55. The relevant period dates back three years from the date on which this Complaint was filed because the FLSA provides a three-year statute of limitations for claims of willful violations brought under the FLSA. 29 U.S.C. § 255(a).

56. All potential 216(b) Collective Action Members are similarly situated because they were or are employed as chauffeurs for JET Limousines and were or are subject to JET Limousines' and Defendant Jinks' common policy or practice of not paying its chauffeurs for mandatory off-the-clock work, and failing paying the chauffeurs overtime and the full amount of tips owed.

57. The foregoing conduct of the Defendants is in violation of the rights of Plaintiff and the Collective Action Members under the Fair Labor Standards Act of 1938, as amended.

58. Plaintiff and the Collective Action Members were "employees" of Defendants as that term is defined by the FLSA. 29 U.S.C. § 203(e).

59. Defendants "employed" Plaintiff and the Collective Action Members as that term is defined by the FLSA. 29 U.S.C. § 203(g).

60. Defendants were "employers" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

61. Defendants employed Plaintiff and the Collective Action Members in an enterprise "engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s)(1).

62. Defendants' violations were willful, because all Defendants knew or showed reckless disregard as to whether their actions violated the FLSA. U.S.C. § 255(a).

63. As a result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members, past and present, have suffered damages by failing to receive all wages earned and owing to them for all hours worked, in an amount to be determined at trial, and are entitled to recover of such amounts, liquidated damages, pre-and post-judgment interest, their reasonable attorneys' fees, costs, and other such compensation and legal remedies as allowed by law, including declaratory and injunctive or other equitable relief. 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendants, and pray this Court:

A. Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated employees, regardless of actual title, who worked for Defendant as chauffeurs in Arizona during the last three years, informing them of their right to file consents to join the FLSA portion of this action;

B. Designate Plaintiff Michael Reynolds as the Named Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members.

C. Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. 216(b);

D. Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

E. Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collection Action Members of the alleged wage and hour violations; and

F. Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**Class Action Allegations**

Plaintiff brings Count II (Violation of the Arizona Wage Statutes) and Count III (Violation of the Arizona Minimum Wage Act) on behalf of himself and the following persons:

**All individuals employed by JET Limousines as chauffeurs at any time from January 22, 2022 to the present.** ("Class Members").

**Count II – Fed. R. Civ. P. 23 Class Action
Violation of the Arizona Wage Statutes**

64. Plaintiff incorporates by reference the allegations above.

65. Defendants were aware of their obligation to pay overtime wages to Plaintiff and the Class Members pursuant to A.R.S. § 23-351.

66. Defendants were required pursuant to A.R.S. § 23-353 to pay Plaintiff and the Class Members all wages due, including overtime compensation, tips, and wages for all hours worked, at the end of every regular pay period.

67. Defendants were required pursuant to A.R.S. § 23-353 to pay Plaintiff and the Class Members all wages due, including overtime compensation, tips, and wages for all hours worked, within the statutory time periods set forth in A.R.S. § 23-353.

68. Defendants willfully failed and refused to timely pay all wages due Plaintiff and the Class Members at the end of each regular pay period.

69. Defendants willfully failed to pay all wages due Plaintiff and the Class Members upon termination of the employment relationship.

70. Defendants unlawfully deducted unauthorized amounts from Plaintiff's and the Class Members' wages in violation of A.R.S. § 23-352.

71. As a result of Defendants' unlawful acts, Plaintiff and the Class Members are entitled to the statutory remedies provided in A.R.S. § 23-355, including but not limited to treble damages.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against JET Limousines and William Jinks, jointly and severally, and pray this Court:

A. Certify the state law claim in Count II above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designate Plaintiff Michael Reynolds as the Class Representative of the Class Members and undersigned counsel as the attorneys representing the Class Members;

C. Award Plaintiff and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. 23-364.

D. Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

E. Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

72. Plaintiff and the Class Members are entitled to recover the unpaid balance of the full amount of unpaid wages owed, together with treble damages, costs, and reasonable attorney fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Count III – Fed. R. Civ. P. 23 Class Action for Violations of Arizona Minimum Wage Act

73. Plaintiff incorporates by reference the allegations above.

74. Defendants were aware of their obligation to pay minimum wages to Plaintiff and the Class Members pursuant to A.R.S. § 23-363.

75. Defendants were required to pay Plaintiff and the Class Members the appliable minimum wage pursuant to A.R.S. § 23.363 but failed to do so.  Defendants were required to post notices in their workplaces notifying employees of their rights pursuant to A.R.S. § 23-364(D) but failed to do so.

76. Defendants willfully failed and refused to pay minimum wages due to Plaintiff and the Class Members at the end of each regular pay period.

77. As a result of Defendants' unlawful acts, Plaintiff and the Class Members are entitled to the statutory remedies provided in A.R.S. § 23-364.

78. Plaintiff and the Class Members were "employees" as that term is defined by the Arizona Minimum Wage Act.

79. Defendants "employed" Plaintiff and the Class Members as "employed" is defined by the Arizona Minimum Wage Act.

80. Defendants were Plaintiff's and the Class Members "employers" as that term is defined by the Arizona Minimum Wage Act.

81. Defendants violated the Arizona Minimum Wage Act when they failed to pay Plaintiff and the Class Members for all hours performing mandatory tasks for JET Limousines off-the-clock as directed by Mr. Jinks, including but not limited to time

spent refueling the vehicles, performing pre-trip and post-trip inspections, driving to pick up JET Limousines customers, cleaning interior and exterior of Company vehicles when necessary, and pre-cooling the interior prior to arrival.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against JET Limousines and William Jinks, jointly and severally, and pray this Court:

F.  Certify the state law claim in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

G.  Designate Plaintiff Michael Reynolds as the Class Representative of the Class Members and undersigned counsel as the attorneys representing the Class Members;

H.  Award Plaintiff and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. 23-364.

I.  Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

J.  Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

82. Plaintiff and the Class Members are entitled to recover the unpaid balance of the full amount of minimum and overtime wages owed, together with treble damages, costs, and reasonable attorney fees.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims with respect to which he may have the right to a jury.

RESPECTFULLY SUBMITTED this 22nd day of January, 2025:

**HKM Employment Attorneys, LLP**

Sandra L. Jonas
Shifa Alkhatib
*Attorneys for Plaintiff*